May it please the Court, I represent Mr. Torio, the petitioner here, and the alien. We are here because of an adverse ruling below, that is, that Mr. Torio's motion to reopen on grounds of changed country conditions, i.e. in the Philippines, did not state sufficient changed grounds or any changed conditions in the country to warrant further hearings before the immigration judge. The reason for the petition is that all the evidence before the Board of Immigration Appeals indicated that there was changed country conditions, and therefore there is no substantial evidence to support the denial. The standard of review here is abuse of discretion. The Ninth Circuit just last Thursday had occasion in the case of Ordonez v. Immigration and Naturalization Service to restate the familiar rule with regard to motions to reopen on the grounds of changed country conditions. The Court is familiar with that, but in particular, the Court said, a notice, a motion to reopen will not be granted unless the respondent, i.e. Mr. Torio here, demonstrates prima facie eligibility for relief where the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied. The documents submitted to the Board of Immigration Appeal not only demonstrate changed country conditions in general, but also changed country conditions with regard to the drug trade. Mr. Torio's nexus to the asylum statute, not previously resolved before this Court, is his outspoken opposition to the drug trade and the corrupting influence it has within Philippine society. Why did Mr. Torio lose the previous case before this Court? It wasn't the fact that there was or was not a drug trade in the Philippines, was it? Well, your point's well taken. And you will note that the motion below only talks about changed country conditions, which from the time that this Court previously decided his appeal, we did not commit the faux pas, Your Honor, of seeking to allude to changed country conditions prior to the time this Court last spoke with regard to Mr. Torio's circumstance. But how does this evidence speak to the problem that you've already established or the Court has already established, which is the lack of a connection to a political motive? And I went through this supplemental information. Where is it? What makes this political? What solves the problem? Your Honor, we cited the Court to the case of Washington Mercantile Association v. Williams, which held very clearly that speech, that 733F 2nd 687 1984 case in this circuit, which holds that speech about drugs for or against its use is clearly political speech. That's the nexus to the asylum statute. Mr. Torio is outspoken or perceived to be outspoken with regard to this issue. You're asking us, in effect, to reverse the decision of the previous panel, which said it wasn't political. That wasn't considered by the previous panel, Your Honor. This case was. I mean, I've got a decision from the Ninth Circuit that says there is no evidence of a political motive for the incident. You're saying that, okay, you're going to argue that case again and we should decide, well, after all, it was political? The evidence that comes before the Court through the motion to reopen is new. I would not commit the faux pas of relying upon what has previously been decided by this Court. It goes back to the question I posed. What in this evidence, can you point to anything specific that solves the problem that was identified by the prior Ninth Circuit decision? Absolutely. May I get the administrative record? Administrative record, page CAR-92, at second. Okay. I'm on 92. Very well. The entire uprising in the Mindanao with regard to Abu Sayyaf is new since the Court's decision. The public announcement, U.S. Department of State, April 18, 2002, new since the previous decision of this Court. And it's the international report, 2001, new since the Court's decision. Now, those are general country conditions which I realize do not establish the discretionary right to relief under a motion to reopen. I think, and I may share the same concern Judge Clifton does, as I understand the record that went up to the prior panel, there were two instances that your client relied upon for acts of persecution. One was the threat by the general to relocate him to a dangerous place. Was that one of them? That was subsequent to a standoff at pistol length, yes, Your Honor. And somebody lobbed a grenade at his house or his garage or something like that? Yes, but the major difficulty is, of course, when it is not part of one's duties as a police officer, by the way, to get involved in an argument at gunpoint with one's superiors over the issue of drugs. I'm not saying those don't amount to persecution or do or should or whatever. I'm just saying here's my question, and help me with this. Those events were in the record, whatever they were, at the time the case came up to the prior panel. Yes. And it concluded that they did not amount to persecution. Yes. Has anything happened to your client, putting changed country conditions aside, anything happened to your client which would amount to persecution that wasn't in front of the prior panel? No. So your case relies upon the fact that the conditions in the country have worsened? Yes. Raising what, the prospect that there's an increased risk of future persecution if he were returned? Yes. And I'd like to reserve some time, if I may, for rebuttal, but the evidence in the record indicates that the Philippines has, since this court's decision last, on evidence not then in the record, has experienced a wellspring, if I may use that word, of illegal drug trade, which corrupts the body politic. And that's his petition. You send him back and he's going to get a bullet in his head because he's outspoken on the subject of drugs. Now, these papers that I have in front of you, that are in front of the BIA, in front of the court, don't conclusively prove that, but they permit the inference, and it's the only evidence in the record. Please understand that in opposition to the motion to reopen below, the government did not introduce Philippine country reports from the Department of State or any of the numerous materials one would think that they'd have available to show that this is just so much make wake. They didn't do that. It's a state of the evidence before the Board of Immigration Appeals and the state of the evidence before this court, which is wholly in favor of Mr. Torrio's position. And that's our argument here. You wanted to save a little time for rebuttal? Yes, Your Honor. Okay. You have a little over a minute and a half. Thank you for your argument. Mr. Payne. Thank you. Good morning. Anthony Payne on behalf of the Attorney General. It's undisputed that the motion to reopen in this case was filed untimely and that it is numerically barred. What does that mean? Well, pursuant to ACFR 3.2, a motion to reopen has to be filed 90 days after the initial board's decision. In this case, the motion to reopen was filed more than four years after the board's initial decision. So when you say numerically barred, you mean it was late? Well, in addition to that, under ACFR 3.2, only one motion to reopen may be filed. Previously, before the state's decision. Right, but isn't this all about the exception to that? Yes. I mean, we know that, but he's arguing changed country conditions. Right. So the numerical bar and the timeliness bar really don't apply, right? Exactly. Okay. But the exception to those bars reads that an asylum application based on changed circumstances arising in the country of nationality or the country to which deportation has been ordered, if such evidence is material, it's the government's position that the board found in finding no changed circumstances that the evidence presented in this case is not material. The new evidence. This is so because the asylum application submitted with the motion to reopen raises the exact same claim that has been decided by this court. Right, but the trouble I have with that, I mean, it seems to me that, and you can correct me if you think my thinking is incorrect on this, but it seems to me we just reviewed the decision of the BIA not to reopen on the basis of changed circumstances, and that's fairly deferential review of that. But the BIA could have denied it for failure to make a prima facie case as well, and that would have been probably perfectly proper given the prior panel's determination, but it didn't do it. It just denied it on changed circumstances. And since, as I think you and your colleagues often remind us, we only look at the BIA decision, it seems to me the focus that we have to have is the changed circumstances alone and not the underlying asylum petition. It's easy to leapfrog over that and say it's not going to work anyway because you've already determined that. But is that what you're viewed to? The appropriate appellate focus? Yes, I agree with the court. You review the board's decision. In this case, the board found no changed circumstances. What that means under ACFR 3.2C3II, that means the evidence presented must be material. That means material to the asylum application. Or it may have said, couldn't the board have just said, we don't think the changed circumstances that are tendered or the alleged changed circumstances are sufficient to alter the outcome of the case regardless of, yeah. The board could have said that. The board certainly could have been clearer in its decision. We don't know that because it just said no changed circumstances. Right. So the court reviews the record under an abuse of discretion standard to see if the board abuses discretion by finding no changed circumstances. The government submits that the evidence presented has nothing to do with the asylum claim. The material references Abdu Saif. Mr. Torrio is claiming persecution and a well-founded fear of persecution based on his political opinion of being in the military. That has nothing to do with Abdu Saif. Well, what I read the additional material to argue, whether one accepts it or not, is that the reason for the claimed past persecution was his objection to the government's blind eye, if you will, towards the drug trade. This new information is aimed at the notion that the conditions surrounding that blind eye have not improved, they've materially worsened. Why isn't that material? Well, because much of that material does not reference the drug trade. The materials that do reference the drug trade are general in nature, that there's a drug, quote, unquote, epidemic. It does not reference the particular claim of Mr. Torrio. It does not reference military members who, quote, unquote, are outspoken about procedures in the military against drug traffickers. In fact, one of the pieces of evidence suggests that the government is cracking down, if I may, on military officers who are lenient towards the drug trade. One of the pieces of material, I believe it is the IAFCA.com evidence, indicates that the government sentenced to death 10 police officers who let go suspected drug traffickers. That suggests that his claim, his asylum claim, has even less merit than when it was previously denied by this court. In essence, it is the government's position that the board correctly held or did not abuse its discretion in finding that there are no changed circumstances because the materials submitted do not materially affect the asylum claim. Mr. Torrio entered the United States nearly 10 years ago as a visitor for pleasure. He has remained in this country through the judicial process and the board process. The board simply denied his motion to reopen because he failed to establish changed circumstances. The record supports this, and the government submits that the petition should be denied. Thank you. Thank you for your argument, Counsel. Rebuttal? Thank you, Counsel. May it please the Court. Drug dealers, drug barons, mules don't file tax returns, don't publish reports. The kind of evidence you get about these individuals frequently is obscure. It's not difficult to get the kind of reporting that one would expect from board of directors of a publicly held corporation in this country. The material that has been volunteered to the Board of Immigration Appeals is exactly the kind of information you would expect if, in fact, someone wanted to point to the difficulties posed by the increased difficulties posed by the drug trade in the Philippines. It is material. Mr. Torrio comes before this Court on an abuse of discretion standard. What we want the Board of Immigration Appeals to do is look at the evidence, exercise its discretion, and come to a decision. That's it. Thank you very much, Your Honor. Thank you, Counsel. Thank both Counsel for their arguments. The case just argued will be submitted, and we'll proceed to the next case on the docket, which is Martinez v. Texaco. Counsel will come forward, please. Mr. Hoffman? Thank you, Your Honor. Before you begin, I'd ask everyone in the audience, if you have a cell phone with you in your purse, briefcase, or pocket, reach down, find it, turn it on, please. Thank you.
judges: Hawkins, Thomas, Clifton